*Steinbergin v. City of New York*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of April, two thousand twenty-two.

PRESENT:    Amalya L. Kearse,
            Robert D. Sack,
            Steven J. Menashi,
                    *Circuit Judges.*

_____

Troy Steinbergin,

     *Plaintiff-Appellant*,

   v.                                          No. 21-536

City of New York, Jamal Hairston, Undercover Officer 0076, Undercover Officer 0039, individually and in their official capacities,

*Defendants-Appellees,*

*and*

John or Jane Doe 1-10,

*Defendants.*[*]

_____

| | |
|---|---|
| *For Plaintiff-Appellant*: | Sang J. Sim, Sim & DePaola, LLP, Bayside, NY. |
| *For Defendants-Appellees*: | Georgia M. Pestana (Richard Dearing, Elina Druker, Jesse A. Townsend, *on the brief*), Corporation Counsel of the City of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Furman, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Troy Steinbergin appeals the district court's dismissal of claims

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

brought against the City of New York ("City") and multiple police officers of the New York Police Department ("NYPD") under 42 U.S.C. § 1983, for alleged violations stemming from his 2014 arrest and subsequent conviction in New York state court for the sale of a controlled substance. In this appeal, Steinbergin pursues claims of false arrest and false imprisonment, malicious prosecution, malicious abuse of process, and denial of the right to a fair trial, as well as various parallel claims brought under state law.[1] We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal.

## I

On June 21, 2014, three NYPD officers, including Undercover Officer 0076 ("UC 0076") and Undercover Officer 0039 ("UC 0039"), conducted a "buy-and-bust" operation in Harlem. Around 7:00 p.m., UC 0076 entered a building at 1760 Lexington Avenue and, using prerecorded buy money, purchased three foil packets of cocaine from a man in the stairwell of the building. UC 0076 then left the building and reported the transaction to his fellow officers, describing the

---

[1] The district court concluded that Steinbergin abandoned his failure-to-intervene claim against all defendants as well as his federal claims against UC 0039. Steinbergin does not appear to dispute either holding on appeal. Even if he had, it would not affect our decision to affirm.

suspect who sold him the cocaine as a "[l]ight skinned" "black" "male" "wearing a black shirt with red lettering on the front of it." App'x 32. "A few minutes" later, responding officer Detective Jamal Hairston arrived on the scene, "f[ou]nd a person matching that description"—Steinbergin—and detained him in handcuffs. App'x 32-33. "Approximately 3 or 4 minutes" after Steinbergin was first placed into custody, App'x 33, UC 0076 made "a confirmatory identification" that Steinbergin was the individual from whom he had bought the cocaine, App'x 72. Hairston also sent UC 0076 a photograph of Steinbergin and received a text confirmation: "positive, thanks." App'x 34. Steinbergin was searched at the scene, taken to the local precinct, and searched again, though neither drugs nor the prerecorded buy money was found on his person. Steinbergin was indicted on one count of criminal sale of a controlled substance in the third degree and one count of criminal possession of a controlled substance in the seventh degree, though he denies that he sold drugs to anyone on that date or at that address.

Steinbergin's motion to suppress UC 0076's positive identification was denied by the trial court, and Steinbergin was subsequently convicted of criminal sale of a controlled substance in the third degree and sentenced to four years in prison followed by three years of supervised release. In 2018, the New York

4

Appellate Division reversed Steinbergin's conviction, *People v. Steinbergin*, 73 N.Y.S.3d 547 (1st Dep't 2018), and on remand from that decision prosecutors recommended dismissal of the charges because the arresting officers had "little to no memory of the circumstances of th[e] drug sale." App'x 66. As a result, Steinbergin's criminal charges relating to that incident were dismissed on October 9, 2018, and on February 11, 2019, Steinbergin brought this action. On cross-motions for summary judgment, the district court granted the City's motion and denied Steinbergin's motion; this appeal followed.

## II

We review "*de novo* a decision on a motion for summary judgment." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether there are genuine issues of material fact, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," and "[w]e may only affirm if it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Terry v. Ashcroft*, 336 F.3d 128, 137

5

(2d Cir. 2003) (internal quotation marks omitted).

## III

The existence of arguable probable cause for an arrest entitles a police officer to qualified immunity against a false arrest claim. *See Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). Probable cause exists when "the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Arguable probable cause exists when "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997).

Officer Hairston had arguable probable cause to arrest Steinbergin because Steinbergin matched the description that UC 0076 had given Hairston minutes before, of a "black" "light-skinned" "male" "wearing a black shirt with red lettering" in the immediate vicinity of where the sale had occurred. Because officers may reasonably "rely on the accounts provided by other officers at the scene" in determining whether probable cause exists, *Martinez v. Simonetti*, 202

6

F.3d 625, 635 (2d Cir. 2000); *see also United States v. Durand*, 858 F. App'x 452, 454-55 (2d Cir. 2021) (holding that officers had probable cause for arrest because witnesses "had identified an individual … who matched [the defendant's] description"), these facts provide support for Hairston's reasonable belief that Steinbergin had committed a crime. Without deciding whether the arresting officers had actual probable cause to arrest Steinbergin, the district court's determination that arguable probable cause existed at the time of arrest was not erroneous. The existence of arguable probable cause is enough to dispose of the false arrest and false imprisonment claims because it entitles the defendants to qualified immunity on these claims. *See Jenkins*, 478 F.3d at 87 (holding that arguable probable cause for arrest entitles a police officer to qualified immunity against a false arrest claim).

In addition, the district court properly dismissed Steinbergin's false arrest and false imprisonment claims as time barred. We "look to state law for the length of the limitations period" for § 1983 claims. *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019). For claims arising in New York, the statute of limitations is three years. N.Y. C.P.L.R. § 214(5); *see also Owens v. Okure*, 488 U.S. 235, 249-51 (1989). Accrual, on the other hand, "is a question of federal law, conforming in general to common-

law tort principles." *McDonough*, 139 S. Ct. at 2155 (internal quotation marks omitted). Claims of false arrest and false imprisonment accrue against a plaintiff "when legal process [i]s initiated against him." *Wallace v. Kato*, 549 U.S. 384, 390 (2007). We have held that such process has begun "at least by the point a criminal defendant is arraigned on charges," *Watson v. United States*, 865 F.3d 123, 131 (2d Cir. 2017), such that a plaintiff need not wait for his conviction to be overturned or invalidated to pursue an arrest-based claim, *McDonough*, 139 S. Ct. at 2159 ("A false-arrest claim … has a life independent of an ongoing trial or putative future conviction—it attacks the arrest only to the extent it was without legal process, even if legal process later commences."). In this case, Steinbergin was arraigned on June 22, 2014. Even if we were to consider accrual to have occurred when Steinbergin was convicted on April 22, 2015, the three-year statute of limitations expired well before he filed this lawsuit in 2019. The district court therefore appropriately dismissed these claims.

Next, we turn to Steinbergin's malicious prosecution claim. Here too, to prevail on a malicious prosecution claim under New York law, Steinbergin must show "lack of probable cause." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). The return of the grand jury indictment "creates a presumption of probable

8

cause" against a claim of malicious prosecution "that may only be rebutted by evidence that the indictment was procured by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* (internal quotation marks and emphasis omitted). Steinbergin's assertion that he never sold drugs to UC 0076, without more, cannot reasonably support an inference of fraud, perjury, suppression of evidence, or other bad-faith police misconduct, and thus this claim fails as well.

Steinbergin's malicious abuse of process claim was also properly dismissed because it was time barred. Because accrual began on June 21, 2014, the date of Steinbergin's arrest, the three-year statute of limitations expired before he brought suit in 2019. Steinbergin suggests that his malicious abuse of process claim did not accrue until the termination of the criminal proceedings against him, but we disagree. *See Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994) (noting that "favorable termination of prior proceedings is not an element of" abuse of process); *see also Hadid v. City of New York*, 730 F. App'x 68, 71 (2d Cir. 2018) (noting that, because "the fact of [a plaintiff's] ultimate conviction of the offense … does not necessarily dispel the possibility that he was the victim of unconstitutional abuse of process in the events leading up to the conviction," a plaintiff can "pursue[] [an abuse of

9

process] claim while the ... prosecution [is] pending or while his conviction st[ands]," and, therefore "*Heck* tolling is ... not appropriate" for abuse of process claims).

Turning to the last of the federal claims pressed in this case, we analyze the district court's dismissal of Steinbergin's claim that he was denied the right to a fair trial. To prevail on a claim that the defendants denied him the right to a fair trial based on fabrication of evidence, Steinbergin must establish that an "investigating official" "fabricate[d] information" against him, *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016), or otherwise "that the defendant knowingly ma[de] a false statement or omission" against him, *Ashley v. City of New York*, 992 F.3d 128, 143 (2d Cir. 2021). Steinbergin cannot make that showing simply by denying that he sold drugs to UC 0076. At most, this allegation (if credited) would support a reasonable inference that the arresting officers mistakenly identified Steinbergin instead of the real seller, but it cannot alone support a claim that any of the defendants fabricated evidence or knowingly made a false statement. Therefore, Steinbergin's claim that he was denied the right to a fair trial was properly dismissed.

Finally, the district court did not abuse its discretion in declining to exercise supplemental jurisdiction over Steinbergin's parallel state claims because each of his federal claims was properly dismissed. "[D]istrict courts may decline to exercise supplemental jurisdiction over" a pendent claim arising under state law when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine … will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). The district court's reasoning that the questions implicated in the remaining claims were best left to state courts was not erroneous.

\*     \*     \*

We have considered Steinbergin's remaining arguments, which we conclude are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11